UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 15-40072

| | |
|---|---|
| SHAWN MULLIGAN, individually, and derivatively on behalf of ELITE ENTERPRISE SERVICES, LLC, )<br><br>Plaintiff, )<br><br>v. )<br><br>JONATHAN KOOP and DAVID JEFFRESS )<br><br>Defendants, )<br><br>and )<br><br>ELITE ENTERPRISE SERVICES, LLC )<br><br>Nominal Defendant )<br><br>and )<br><br>THRIVE NETWORKS, INC. and DIGITAL FEDERAL CREDIT UNION )<br><br>Trustee Defendants. ) | **VERIFIED COMPLAINT** |

**Introduction**

This action arises in relation to a business dispute between Plaintiff Shawn Mulligan and

Defendant Jonathan Koop, who are the sole members of Elite Enterprise Services, LLC, an entity

organized under the laws of Delaware. Mr. Mulligan and Mr. Koop each own a 50% interest in

Elite Enterprise Services, LLC. Elite Enterprise Services, LLC is in the business of evaluating

and purchasing portions of debt portfolios from debtholders and then selling the purchased debt

to third parties. This business venture developed from a prior partnership between Mr. Mulligan

and Mr. Koop.

Mr. Mulligan, individually and derivatively on behalf of Elite Enterprise Services, LLC, asserts claims against Mr. Koop for violations of his fiduciary duty to Elite Enterprise Services, LLC and its member(s).  Mr. Mulligan also seeks injunctive relief, prohibiting Mr. Koop and his business associate, Defendant David Jeffress, from unlawfully utilizing confidential data acquired by Elite Enterprise Services, LLC in the course of its business, and prohibiting Mr. Koop from sharing said data with any third party, including but not limited to Defendants Jeffress, and from engaging in any actions directly adverse to Elite Enterprise Services, LLC and/or its customers' interests, including using customers' data for any wrongful purpose.  Mr. Mulligan also requests an injunction prohibiting Mr. Koop from engaging in any behavior that is harmful or competitive toward Elite Enterprise Services, LLC, including contacting the LLC's customers for his own personal gain or for other business purposes designed to exclude Elite Enterprise Services, LLC.

Lastly, Mr. Mulligan, individually and on behalf of Elite Enterprise Services, LLC, also seeks injunctive relief in the form of instructions to the trustee defendants as to how they should proceed with respect to the management and control of Elite Enterprise Services, LLC's bank account(s) and storage of its network data, as Elite's accounts with the trustee defendants are currently frozen as a result of the dispute between the members of Elite Enterprise Services, LLC.

## Parties

1. Plaintiff Shawn Mulligan is an individual who resides in Worcester, Massachusetts.

2. Elite Enterprise Services, LLC is a Delaware limited liability company with a principal office at 6991 East Camelback Road, Suite D300, Scottsdale, Arizona and the following registered agent: Harvard Business Services, Inc., 16192 Coastal Highway, Lewes, Delaware 19958.

3.  Shawn Mulligan and Jonathan Koop are the sole members and managers of Elite Enterprise Services, LLC.

4.  Defendant Jonathan Koop is an individual who resides at 4111 N. Drinkwater Boulevard, B104, Scottsdale, Arizona.

5.  Defendant David Jeffress is an individual who resides at 900 South 94th Street, Unit 1088, Chandler, Arizona.

6.  Trustee Defendant Thrive Networks, Inc. is a Massachusetts corporation with a principal office at 500 Staples Drive, Framingham, Massachusetts.

7.  The registered agent for Thrive Networks, Inc. is Corporation Service Company, 84 State Street, Boston, Massachusetts.

8.  Trustee Defendant Digital Federal Credit Union is a not-for-profit financial cooperative headquartered at 220 Donald Lynch Boulevard, Marlborough, Massachusetts.

## Jurisdiction and Venue

9.  This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1332.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in this judicial district.

## Factual Statements

11. In or about June 2010, Mr. Mulligan and Mr. Koop created Elite Enterprise Services, Inc., a Massachusetts corporation, to engage in the business of purchasing and selling debt.

12. In July 2012, Elite Enterprise Services, Inc. was converted to a limited liability company, Elite Enterprise Services, LLC.

13. In or about 2012, either Elite Enterprise Services, Inc. or Elite Enterprise Services, LLC commenced doing business as "Bankrupt & Deceased Debt Acquisitions."

14. In or about June 2013, Mr. Mulligan and Mr. Koop created Elite Enterprise Services, LLC ("Elite"), a Delaware limited liability company, and merged the Massachusetts limited liability company into the Delaware limited liability company.

15. Mr. Mulligan and Mr. Koop are the sole owners and managers of Elite.

16. Elite is widely known in the industry as Bankrupt & Deceased Debt Acquisitions. This is the name utilized on Elite's website, in its advertisements, at tradeshows and when answering telephone calls.

17. Elite's business model is to approach holders of large debt portfolios and offer to review and evaluate the debtholders' portfolios for the purpose of identifying a small percentage of accounts that Elite would offer to purchase.

18. The debtholders grant access to their portfolios strictly for the limited purpose of facilitating a potential sale of a portion of their debt portfolios to Elite.

19. In this process, Elite is granted access to and given custody of large debt portfolios, some of which contain hundreds of thousands of accounts containing individual debtor information.

20. Elite enters into confidentiality and non-disclosure agreements with the debtholders prior to being granted access to the debt portfolios, clearly stating that access is granted solely for the limited purpose of review for potential purchase, as said data regarding the debtors and debt instruments often includes personally identifiable information, including names, addresses, phone numbers, dates of birth, social security numbers, etc. A true and accurate redacted copy of a sample confidentiality agreement is attached hereto and marked **Exhibit A**.

21. Once it acquires ownership, Elite also enters into confidentiality agreements with the prospective purchasers of the debt portfolios.  A true and accurate redacted copy of a sample confidentiality agreement is attached hereto and marked **Exhibit B**.

22. Some of the debt that is reviewed by Elite includes medical accounts, which include confidential data protected by federal law, thus necessitating that the data remain confidential.

23. Elite's trade secrets have allowed it to succeed in a competitive industry.

24. Specifically, Elite reviews debt portfolios, by utilizing a unique internal process and formula exclusively developed by Mr. Mulligan, to stratify and price accounts and formulate an offer to purchase a portion of a debtholder's portfolio.

25. A United States Patent application in relation to said unique process and formula was filed by Mr. Mulligan and Mr. Koop in September 2012 and was later assigned to Elite.

26. Said United States Patent application currently is pending approval by the United States Patent and Trademark Office.

27. Elite targets bankrupt and deceased debt, which is a small subset of the average portfolio.

28. Once Elite obtains ownership of a portion of the debt portfolio, it then sells the debt to a third party.

29. The electronically stored data concerning the debtors and debt instruments which is not purchased by Elite remains in the possession of Elite in manner that is intended to keep the data secure.

30. Elite undertakes substantial efforts to ensure that the data concerning the debt portfolios that it purchases remains confidential, including but not limited to the following:

    a. Entering into confidentiality agreements with customers;

b. Requiring the encryption of electronic transfers containing confidential customer data;

c. Requiring customers to transfer data through Elite's secure electronic transfer system (Egnyte) or using another secure site;

d. Limiting employee access to areas of the network drive containing consumer/customer data;

e. Requiring workstations to be locked when an employee leaves his or her station; and

f. Upgrading Elite's IT system security by transferring data storage to a Thrive, a cloud-based storage system, which is known for providing industry leading system security.

31. In or about mid- to late-2014, Mr. Koop secretly formed an alliance with Defendant David Jeffress to engage in a new business venture.

32. In or about September 2014, Mr. Koop hired the law firm of Fletcher Tilton in Worcester, Massachusetts, who had previously acted as counsel to Elite, to form a Delaware limited liability company called Icon Capital Holdings, LLC ("Icon"). See Fletcher Tilton Invoice dated November 14, 2014, attached hereto and marked **Exhibit C**.

33. Mr. Mulligan and Mr. Koop had previously operated an entity named Icon Debt Holdings.

34. As part of his cover-up of his breach of his fiduciary duty, Mr. Koop informed Mr. Mulligan that he was referring a friend to Fletcher Tilton, as the friend was purportedly starting a business.

35. Mr. Koop stated that he had absolutely no involvement in his friend's business and that the business was unrelated to Elite's industry.

36. At the same time, Mr. Koop secretly purchased and personally paid for the domain name iconcapitalholdings.com and the email address djeffress@iconcapitalholdings.com. See Go Daddy receipts, attached hereto and marked **Exhibit D**.

37. In or about November 2014, Mr. Koop approached Mr. Mulligan and informed him of his connection with Icon and the intended purpose of that business entity.

38. Specifically, Mr. Koop informed Mr. Mulligan that, based upon a review of the data in Elite's possession, he intended to cultivate "leads" of litigious debtors to be sold to debtor litigators for a referral fee.

39. Mr. Koop explained to Mr. Mulligan that his intent was to reach out to the debtors through Icon, an entity created for that purpose, and to solicit the debtors to bring claims for unlawful debt collection practices against the holders of the debt instruments, some of whom were Elite's current customers.

40. Mr. Koop described the potential for the sale of "leads" as a lucrative opportunity.

41. Mr. Koop also indicated that he had spoken with at least one attorney who specialized in suing debt collectors and debtholders.

42. Mr. Koop assembled a list of attorneys specializing in litigation against debt collectors and debt holders, and upon information and belief, had discussions and negotiations with one or more attorneys. See true and accurate copies of documents obtained from Elite's computer system, attached hereto and marked **Exhibit E**.

43. Mr. Koop also indicated that he had formed Icon under Mr. Jeffress name (in collusion with Mr. Jeffress) in order to serve as the seller of the "leads."

44. It was apparent to Mr. Mulligan that Mr. Koop recognized that the transfer of the data and/or sharing of access to the data would constitute a breach of Elite's obligations to preserve the confidentiality of its customers' data, as well as a violation of law.

45. Mr. Koop detailed to Mr. Mulligan the necessity of concealing his involvement in Icon, and stated that the entity would be organized with Mr. Jeffress as the sole owner and manager.

46. Mr. Koop also suggested that to accomplish the transfer of data to Icon, the data could be downloaded by Elite to a laptop, which laptop could then be reported stolen by Elite, to create an appearance that he and Elite had no involvement in any wrongdoing.

47. As an alternative, Mr. Koop suggested that the data could be downloaded by Elite directly to a thumb drive and then transferred by mail or hand-delivery to Icon, but that data should not be transferred by electronic mail to avoid the future discovery of the transfer.

48. Later, Mr. Koop confirmed to Mr. Mulligan that he had taken additional affirmative steps to carry out his plan by purchasing (through Icon) approximately 1,000 leads from one of Elite's existing customer.

49. When Mr. Mulligan questioned what the customers were told, as it could not have been "to get them sued," Mr. Koop responded that the leads were purchased under the guise that the information was to be used for "marketing purposes."  See **Exhibit F**.

50. Mr. Mulligan also learned that Mr. Koop had developed a script and provided it to a call center to commence soliciting debtors who may be interested in bringing claims for unlawful debt collection practices.  See true and accurate copy of script and computer file record printed from Elite's computer system, evidencing that Mr. Koop was the author and creator of the script attached hereto and marked **Exhibit G**.

51. Records retrieved by Mr. Mulligan from Elite's computer system evidence that Mr. Koop was the creator of the script, created for the purpose of recruiting litigants to bring claims against Elite's customers. See **Exhibit G**.

52. The script read as follows:

> **Hello,**
>
> **Our group specializes in protecting debtors like you. If you are experiencing collection calls, you might be entitled to a large settlement. Collection agencies not obeying proper practices and we would like to take a look at your collections to see if you can benefit from legal advice.**
>
> **Are you interested in suing your collectors.**
>
> See **Exhibit G**.

53. For reasons unknown to Mr. Mulligan, in or about November 2014 Mr. Koop proposed that Mr. Mulligan become involved in Icon.

54. While recognizing that Mr. Koop's wrongful activities could be imputed to Elite, and that they could create liability for Elite and/or destroy the reputation of Elite, Mr. Mulligan did not immediately make his objection to Mr. Koop's proposal known, solely to buy himself additional necessary time to secure and protect the confidential data of Elite's customers and to keep Mr. Koop sharing information so that Mr. Mulligan could further discover the full extent of Mr. Koop's prior actions and his intentions.

55. Mr. Mulligan did, however, initiate a series of actions to secure and protect said data immediately upon learning of Mr. Koop's intentions.

56. Mr. Mulligan immediately changed passwords on Elite's computer system required to gain access to said data, and shared access with only one other key employee, with the explicit instruction that the password was not to be shared with anyone else. See true and accurate copies of email communications attached hereto and marked **Exhibit H**.

57. The employee was instructed that any requests for confidential data from anyone within the company were to be first reviewed by Mr. Mulligan.  See true and accurate copies of email communications attached hereto and marked **Exhibit I**.

58. Mr. Mulligan also created a separate drive and granted access to that drive only to himself and one other employee.

59.  Mr. Mulligan also deleted the data that was no longer necessary for ongoing operations.

60. In the fall of 2014, Elite had hired a cloud-based storage provided called Thrive Networks to consolidate its electronic data, and Mr. Mulligan expedited the process of moving Elite's data onto the cloud-based storage system.  See true and accurate copies of email communications attached hereto and marked **Exhibit J**.

61. Mr. Mulligan specifically instructed Thrive Networks that Mr. Koop was not to have access to the stored data.  See **Exhibit J**.

62. Securing all of the data took more than a month to complete.

63. Once Mr. Mulligan felt that he had done all he could to secure the data, his counsel sent a cease and desist letter dated February 10, 2015 to Mr. Koop. A true and accurate copy of said letter is attached hereto and marked **Exhibit K**.

64. During approximately the same time period, Ophrys, LLC, an entity that purchased a large volume of Elite's debt accounts, notified Elite that, due to increasing liability arising as a result of more stringent industry regulations, Ophrys, LLC was no longer interested in purchasing the so-called "payday loans," which constituted a significant portion of its business with Elite.

65. A disagreement arose between Mr. Mulligan and Mr. Koop as to how to address ongoing liability issues arising in relation to debt that Elite had sold to Ophrys, LLC, which issues

appeared to create potential open-ended liability that Elite could not afford to pay and continue to operate.

66. In March 2015, Mr. Mulligan and Mr. Koop discussed various options, including Mr. Koop's suggestion of ceasing operation and dissolving Elite.

67. It appeared to Mr. Mulligan at that time that there were too many obstacles to move forward with Mr. Koop in running the Elite business, and therefore, reluctantly, Mr. Mulligan agreed to close the business in March 2015.

68. After Mr. Mulligan commenced dismissing employees, Mr. Koop changed his position and stated that he wished to continue the business and to buyout Mr. Mulligan's interest.

69. Mr. Mulligan declined Mr. Koop's multiple offers to purchase his interest in Elite.

70. Mr. Mulligan now believes Mr. Koop's actions were undertaken to squeeze Mr. Mulligan out of the business, including Mr. Koop's actions resulting in Elite's bank account being frozen and by revoking Mr. Mulligan's access to Egnyte, which is the operating system Elite utilized to exchange data with customers, Elite ceased operation in March 2015.

71. Once circumstances had changed and Mr. Mulligan was able to negotiate a general release with Ophrys, LLC at an affordable price, thus eliminating the threat of reoccurring, open-ended liability, Mr. Mulligan then reconsidered his prior position, and informed Mr. Koop that he intends to continue the business.

72. Mr. Koop responded that he is no longer interested in being involved in Elite, and that he has "gone in another direction."  See true and accurate copy of email dated May 17, 2015, attached hereto and marked **Exhibit L**.

73. Upon information and belief, one of the reasons that Mr. Koop wishes to abandon Elite is that his actions through Icon have created potential liability for Elite.

74. Multiple customers have reported to Mr. Mulligan that Mr. Koop has secretly contacted them in an effort to personally engage in business with those customers, thereby excluding Elite and Mr. Mulligan.

75. One Elite customer informed Mr. Mulligan that it was contacted by Mr. Koop, requesting that the customer engage in business with Mr. Koop's new entity under the same terms pursuant to which it was doing business with Elite.

76. Upon information and belief, Mr. Koop is now engaging in business using the name Bankrupt & Deceased Debt Acquisitions.

77. LCI is an entity that Elite contracts with to analyze its data.

78. Mr. Koop's new business then, without Mr. Mulligan's knowledge or permission, utilized LCI to analyze records for Mr. Koop's new entity.

79. Incredibly, Mr. Koop caused LCI to bill Elite for analyzing or "scrubbing" more than one million records in April 2015 for Mr. Koop's new business, at the time Elite was no longer operating.  See true and accurate copies of LCI Invoices for March 2015 and April 2015, attached hereto and marked **Exhibits M** and **N**.

80. Upon information and belief, Mr. Koop has continued to send data to be analyzed by LCI so that he may continue to engage in business to the exclusion of Mr. Mulligan and Elite.

81. Elite's customer, Ophrys, LLC, has now informed Mr. Mulligan that it wishes to terminate its buying agreement with Elite.

82. Upon information and belief, Ophrys, LLC is now engaging in business directly with Mr. Koop and/or an entity that he controls.

83. Upon information and belief, Mr. Koop has hired one or more of Elite's former employees, and continues to operate under Elite's d/b/a Bankrupt & Deceased Debt Acquisitions.

84. The company that handles Elite's licensing notified Mr. Mulligan that Mr. Koop had created a new entity. See true and accurate copies of email communications attached hereto and marked **Exhibit O**.

85. The company that handles Elite's payroll notified Mr. Mulligan that Mr. Koop was opening a new business. See Email communications attached hereto and marked **Exhibit P**.

86. A number of Elite's customers, including its buyers and sellers, affirmed in early-May 2015 that they still were willing to engage in business with Elite. See true and accurate copies of email communications attached hereto and marked **Exhibit Q**.

87. However, shortly thereafter Mr. Mulligan received a voicemail message from one of its largest buyers (which had previously confirmed that it wished to continue doing business) stating that it was now intends to enter into a transaction with Mr. Koop.

<u>**Facts relating to Trustee Defendants**</u>

88. On April 2, 2015, Mr. Koop contacted Thrive Networks and requested access to the secured data against the established security protocols that Mr. Mulligan had set.

89. Mr. Koop secretly commenced a "data dump" of all of the Elite's confidential data to his computer desktop, which process would have taken about two hours.

90. When that process was nearly complete, Thrive Networks contacted Mr. Mulligan and notified him that access had been granted to Mr. Koop and that a data dump was in process.

91. Mr. Mulligan requested that Thrive Networks pursue all available measures to re-secure the downloaded data.

92. Thrive Networks stopped the data download that was still in process and took actions to delete the downloaded information from Mr. Koop's desktop.

93. Upon information and belief, Mr. Koop was able to copy some of the downloaded information onto an external hard drive prior to Thrive Networks deleting the information from his desktop.

94. Mr. Mulligan has since instructed Thrive Networks to delete all data from the cloud storage that it had established for Elite.

95. Thrive Networks has complied and deleted the data, except that the data still exists on Thrive Network's backup system as is believed to be standard in the data storage industry.

96. Mr. Koop's attorney has contacted Thrive Networks to attempt to gain access to the data stored in Thrive Network's backup system.

97. Mr. Mulligan instructed Thrive Networks that it was not authorized to release the data to Mr. Koop.  See true and accurate copies of email communications between Shawn Mulligan and Seth Freeman dated April 9, 2015, attached hereto and marked **Exhibit R**.

98. Thrive Networks has stated that it will take no further action without a judicial order.  See **Exhibit R**.

99. In or about early-April 2014, Mr. Koop also sought access to an Elite bank account with Digital Federal Credit Union, although he is not a signatory on the account.

100.   Mr. Mulligan was informed by the bank that, when denied access, Mr. Koop deceptively and fraudulently represented to the bank that he was a majority owner of Elite.

101.   Upon information and belief, Mr. Koop requested that the bank account be frozen.

102.   Said actions have resulted in the bank account being frozen.  See true and accurate copy of letter from DCU dated April 23, 2015 attached hereto and marked **Exhibit S**.

103.   As a result Mr. Koop's actions, Elite has been unable to engage in business.

## COUNT I
### Breach of Fiduciary Duty
### (Shawn Mulligan, individually and derivatively on behalf of Elite Enterprise Services, LLC v. Jonathan Koop)

104.   Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

105.   As a member of Elite Enterprise Services, LLC, Defendant Jonathan Koop owes a fiduciary duty to Elite Enterprise Services, LLC and its other member(s).

106.   Defendant Jonathan Koop has breached his fiduciary duty owed to Elite Enterprise Services, LLC and to Mr. Mulligan by secretly engaging in activities designed to compete with and/or harm Elite Enterprise Services, LLC, including but not limited to attempting to pilfer its customers.

107.   Defendant Jonathan Koop has breached his fiduciary duty owed to Elite Enterprise Services, LLC and to Mr. Mulligan by misappropriating and/or conspiring and taking affirmative steps to misappropriate confidential data belonging to customers of Elite Enterprise Services, LLC

108.   Defendant Jonathan Koop has breached his fiduciary duty to Elite Enterprise Services, LLC and to Mr. Mulligan by violating and/or conspiring and taking affirmative steps to violate confidentiality agreements between Elite Enterprise Services, LLC and its customers.

109.   Defendant Jonathan Koop has breached his fiduciary duty to Elite Enterprise Services, LLC and to Mr. Mulligan by causing Elite's bank to freeze the business bank account.

110.   Defendant Jonathan Koop has breached his fiduciary duty to Elite Enterprise Services, LLC and to Mr. Mulligan by failing to work toward achieving the best possible global settlement of liability issues which had arisen in relation to debt that Elite had sold to Ophrys, LLC, in order to obtain a general release.

Wherefore, Plaintiff prays that judgment enter against Defendant Jonathan Koop in the amount of his damages, plus interest and costs.

## COUNT II
**Misappropriation of Trade Secrets and Confidential Business Information**
**(Shawn Mulligan, individually and derivatively on behalf of Elite Enterprise Services, LLC**
**v. Jonathan Koop and David Jeffress)**

111.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

112.    Defendants Jonathan Koop and David Jeffress have unlawfully misappropriated trade secrets and confidential business information belonging to Elite Enterprise Services, LLC's and/or its customers.

113.    Defendants' unlawful conduct has caused and will cause harm to Elite Enterprise Services, LLC and its contractual relations with its customers.

Wherefore, Plaintiff prays that judgment enter against Defendants Jonathan Koop and David Jeffress in the amount of his damages, plus interest and costs.

## COUNT III
**Tortious Interference with Contractual and Business Relations**
**(Shawn Mulligan, individually and derivatively and on behalf of Elite Enterprise Services,**
**LLC v. Jonathan Koop and David Jeffress)**

114.    Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

115.    Defendants have at all times been aware of the confidentiality of the data that Elite Enterprise Services, LLC acquires from its customer debtholders.

116.    Defendants are aware of the confidentiality assurances that Elite Enterprise Services, LLC gives to its debtholders, including binding confidentiality agreements.

117.    The actions and conduct of Defendants Jonathan Koop and David Jeffress to intentionally interfere with Elite Enterprise Services, LLC's business and contractual relations are improper in motive and means.

118. Said interference has caused and will cause Elite Enterprise Services, LLC to suffer substantial damages.

Wherefore, Plaintiff prays that judgment enter against Defendants Jonathan Koop and David Jeffress in the amount of his damages, plus interest and costs.

<u>COUNT IV</u>
**Request for Equitable Relief**

119.    Plaintiff hereby restates and incorporates the allegations set forth in the preceding paragraphs as if fully and completely set forth herein.

WHEREFORE, Plaintiffs request that this Court:

a.    Order that Defendants Jonathan Koop, David Jeffress, and any entity controlled by either individual, shall immediately turn over to Shawn Mulligan all property belonging to Elite Enterprise Services, LLC, including intellectual property;

b.    Order that Defendants Jonathan Koop, David Jeffress, and any entity controlled by either individual, shall immediately turn over to Shawn Mulligan all data belonging to any customer that Elite Enterprise Services, LLC has purchased from or sold to within the last 12 months, including but not limited to all paper copies, as well as electronically stored data.  Defendants may comply with this paragraph by returning and/or certifying that they have destroyed all copies, including electronically stored copies, of said data;

c.    Order that Defendants Jonathan Koop, David Jeffress, and any entity controlled by either individual, are prohibited from disclosing and/or utilizing the unique internal process and

formula exclusively developed by Shawn Mulligan to stratify and price debt portfolios to create offers to purchase portions thereof;

d.  Order that Defendants Jonathan Koop, David Jeffress, and any entity controlled by either individual, shall immediately cease all activities in furtherance of any business venture intended to cultivate leads of litigious debtors to be sold to debtor litigators based upon the review of data acquired from debtholders in the course of their business dealings with Elite Enterprise Services, LLC;

e.  Order that, in the event any leads have been turned over to debt litigators based upon the review of data acquired from debtholders in the course of their business dealings with Elite Enterprise Services, LLC, Defendants Jonathan Koop, David Jeffress, and any entity controlled by either individual, shall immediately identify to this Court all data turned over and to whom said data was given and shall immediately notify the recipient(s) of the data that they are to immediately return said data;

f.  Order that Defendant Jonathan Koop shall not be allowed to access any confidential customer data, including electronically stored data, in the possession of Elite Enterprise Services, LLC;

g.  Order that Defendant Jonathan Koop immediately restore Mr. Mulligan's access to Egnyte and all other access necessary to engage in business on behalf of Elite Enterprise Services, LLC;

h.  Order that Defendant Jonathan Koop shall be prohibited from contacting any customer (including buyers and sellers) of Elite Enterprise Services, LLC;

i.  Order that Defendant Jonathan Koop shall be prohibited from engaging in competition or any other adverse actions that are designed to compete with and/or harm Elite Enterprise Services, LLC and/or its customers;

j.  Order that Defendants Jonathan Koop, David Jeffress, and any entity controlled by either individual, shall be prohibited from utilizing the names Elite Enterprise Services, LLC, Bankrupt & Deceased Debt Acquisitions and any derivatives thereof;

k.  Order that Defendants Jonathan Koop, David Jeffress, and any entity controlled by either individual, shall be prohibited from utilizing the existing website and/or domain name www.bkdeacquisitions.com and associated email accounts and shall turn over to Mr. Mulligan exclusive access to the website, domain name and email accounts;

l.  Order that Thrive Networks, Inc. shall be prohibited from releasing any information whatsoever in connection with Elite Enterprise Services, LLC or the confidential data stored with Thrive Networks, Inc. by Elite Enterprise Services, LLC except that Shawn Mulligan shall be provided full access to said data;

m.  Order that Digital Federal Credit Union shall be prohibited from releasing any funds held in any checking or savings account in the name of Elite Enterprise Services, LLC to Defendant Jonathan Koop, and that Shawn Mulligan shall solely be provided full access to said accounts and funds to utilize on behalf of Elite Enterprise Services, LLC, including but not limited to the defense of any claims or lawsuits against Elite Enterprise Services, LLC;

n.  Order that Shawn Mulligan shall solely control the ongoing day-to-day operations of Elite Enterprise Services, LLC, including solely handling all customer relations, and having sole access to and control of confidential customer data; and

o.   That, after a trial on the merits, such preliminary injunction be made permanent.

**PLAINTIFFS CLAIM A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

Dated:  May 28, 2015                    Respectfully Submitted By
                                        Shawn Mulligan, individually, and derivatively on behalf
                                        of Elite Enterprise Services, LLC
                                        By His Attorney,

                                        */s/ Scott S. Sinrich*
                                        Scott Sinrich, BBO No. 551440
                                        Phillips, Silver, Talman, Aframe & Sinrich, P.C.
                                        146 Main Street, 5th Floor
                                        Worcester, MA 01608
                                        (508) 754-6852
                                        sinrich@pstas.com

## **VERIFICATION**

I, Shawn Mulligan, do hereby verify that the facts set forth above are true to the best of my knowledge or where indicated are true based upon my information and belief. I have personal knowledge of these facts or information has been provided to me upon which I base my belief. Further, I know of no insurance to satisfy my impending judgment against Defendants.

Signed under the pains and penalties of perjury this _27th_ day of May 2015.

Shawn Mulligan